UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COREY S. FRASCA,

    Plaintiff,

v.    Case No. 3:16-cv-1468-J-32MCR

FLORIDA DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____

## ORDER

### I. Status

Plaintiff filed this civil rights case through counsel on July 7, 2016.[1] He is currently proceeding on an Amended Complaint (Doc. 28) naming as Defendants: (1) the Florida Department of Corrections (DOC); (2) David E. Moran in his individual capacity; and (3) Julie Jones, Secretary of the DOC, in her official capacity. Plaintiff raises nine counts including claims pursuant to the Americans with Disabilities Act (ADA), the Rehabilitation Act (RA), the Eighth Amendment, and various state laws.

Before the Court is Defendants' Motion to Dismiss Amended Complaint (Doc. 34) (Motion). Plaintiff filed a Response in Opposition (Doc. 35) (Response). The Motion is ripe for review.

---

[1] The case was originally filed in the Tampa Division of this Court. It was transferred to the Jacksonville Division on November 22, 2016. See Order (Doc. 21).

## II. Amended Complaint[2]

Prior to Plaintiff's incarceration, he was diagnosed with a seizure disorder. While in custody, the DOC medical staff issued Plaintiff a low bunk pass on a yearly basis. On November 16, 2012, Plaintiff was assigned an upper bunk at the Reception and Medical Center (RMC), and he fell off the bunk while having a seizure. This incident did not result in any permanent injuries, but according to Plaintiff, it placed the DOC on notice of Plaintiff's need for a low bunk.

On January 16, 2013, Plaintiff was again assigned to an upper bunk at RMC. Plaintiff alerted Defendant Moran, who was in charge of Plaintiff's dormitory, that Plaintiff needed to be given a low bunk per his medical pass. Defendant Moran told Plaintiff that he would be moved to a lower bunk.

In January 2013, there were two separate incidents where Plaintiff had a seizure, fell, and was injured. The first was on January 21, 2013. On that date, Plaintiff was still assigned to an upper bunk. When he attempted to get on his upper bunk, he had a seizure and fell. As a result of the fall, he re-injured his shoulder and injured his neck and back. When he was released from the medical unit, he was sent back to an upper bunk. The second seizure and fall occurred on January 28, 2013, after Plaintiff was transferred to Gulf Correctional

---

[2] In considering a motion to dismiss, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1297 (11th Cir. 2015). As such, the recited facts are drawn from the Amended Complaint and may differ from those that ultimately can be proven.

Institution.[3] As a result of the January 28th fall, Plaintiff suffered injuries to his left eye,[4] head (which required 8 stitches), neck, back, and shoulder.

Prior to the January 2013 incidents, Plaintiff had asked several times for a protective helmet, but the DOC never provided him with one. As a result of both incidents, Plaintiff suffered disc herniation at C1-2, C2-3, C5-6, L3-4, T6-7, T7-8, T8-9, T9-10, and T11-12. Plaintiff has headaches, and he suffers from chronic pain in his neck, back, and shoulders.

### III. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

---

[3] The Amended Complaint does not contain details as to where or how this fall occurred.

[4] Plaintiff has a prosthetic eye. He alleges that the fall caused damage to the area around the prosthetic and to the prosthetic itself. Plaintiff had two surgeries upon his release from custody to help resolve these issues.

3

## IV. Analysis

### A. Injunctive Relief

Plaintiff agrees that his request for injunctive relief should be stricken because he is no longer incarcerated. See Response at 17. Thus, Plaintiff's request for injunctive relief will be stricken.

### B. Counts I through IV

Plaintiff claims that the DOC violated the ADA and the RA when it denied Plaintiff the benefits of services, programs, and activities on the basis of his disability. Specifically, he alleges that he should have been placed on a lower bunk in compliance with his medical pass (Counts I and II) and provided with a helmet or other device (Counts III and IV) to protect Plaintiff during a seizure.

"To state a claim of discrimination under Title II [of the ADA], a claimant must prove: '(1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.'" Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477 (11th Cir. 2015) (quoting Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007)).[5] For purposes of the Motion to Dismiss, Defendants

---

[5] "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." Badillo v. Thorpe, 158 F. App'x 208, 214 (11th Cir. 2005) (citing Cash v. Smith, 231 F.3d 1301, 1305 & n. 2 (11th Cir. 2000)); see J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ., 877 F.3d 979, 985 (11th Cir. 2017) ("Discrimination claims under the ADA and the [RA] are governed by the same standards, and the two claims are generally discussed together.").

only take issue with the second element, arguing that "Plaintiff has failed to demonstrate that he was excluded from participation in or denied the benefits of services, programs, or activities provided by the []DOC." Motion at 4. Defendants rely on Bryant v. Madigan, 84 F.3d 246 (7th Cir. 1996), and Iseley v. Beard, 200 F. App'x 137 (3d Cir. 2006),[6] for the proposition that sleeping is not a program or activity. See Motion at 4-5.

The Eleventh Circuit has not directly addressed whether bunk placement is a service, program, or activity, but courts in other circuits have and have arrived at differing conclusions. See, e.g., Bryant, 84 F.3d at 249 (stating that "incarceration, which requires the provision of a place to sleep, is not a 'program' or 'activity.' Sleeping in one's cell is not a 'program' or 'activity'"); Simmons v. Godinez, No. 16 C 4501, 2017 WL 3568408, at *6 (N.D. Ill. Aug. 16, 2017) (unpublished) (citing cases recognizing that prisons are required to provide inmates with beds which is arguably a service under the ADA and finding that the plaintiff stated a plausible ADA and RA claim by alleging that the prison "failed to take steps that would allow Plaintiff to access a bed"). Bryant, on which Defendants rely, was decided prior to United States v. Georgia, 546 U.S. 151 (2006). In Georgia, the Supreme Court recognized that "it is quite plausible that the alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities'" under Title II of the ADA. Georgia, 546 U.S. at 157 (quoting 42 U.S.C. § 12132, and citing

---

[6] Defendants purport to quote the Iseley case, but the cited quotation is from Thomas v. Pa. Dep't of Corr., 615 F. Supp. 2d 411, 427 (W.D. Pa. 2009).

5

Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs)). Providing a prisoner with a bed is arguably a service within the meaning of the ADA and RA. See Simmons, 2017 WL 3568408, at *6 ("Providing a prisoner with a bed that he cannot access is no less a failure to reasonably accommodate than housing him in a cell from which he cannot access meals."); see also Kiman v. New Hampshire Dep't of Corr., 451 F.3d 274, 290 (1st Cir. 2006) (concluding that the plaintiff presented sufficient evidence to defeat "summary judgment on whether defendants denied him access to . . . lower tier and bottom bunk placements, in violation of Title II"). While Plaintiff could actually access his bed, he alleges that he could not do so safely because of his disability, and Defendants discriminated against him on the basis of his disability by failing to accommodate him with a lower bunk in accordance with his medical pass.

In an unpublished decision, a panel of the Eleventh Circuit addressed claims under the ADA and Eighth Amendment that are similar to those raised by Plaintiff in this case. In Redding v. Georgia, 557 F. App'x 840 (11th Cir. 2014), the plaintiff alleged that he was denied a bottom bunk assignment, a wheel chair, and medications, and that he was injured as a result. He claimed that he was a qualified individual with a disability and that the prison officials deliberately refused to accommodate his disability-related needs. The Eleventh Circuit found:

> It may have been negligent to assign [the plaintiff] a bunk contrary to his profile, but an Eighth Amendment claim requires conduct rising to a level above even gross negligence.

6

Goodman, 718 F.3d at 1332.[7] That was not shown here, as [the plaintiff] did not allege facts showing a culpable state of mind on the defendants' part. As such, the district court did not err in concluding [the plaintiff] did not state a claim under the Eighth Amendment.

. . . .

[The plaintiff]'s argument fails because he failed to allege that his [bunk] assignment was discriminatory in any way. He stated that he was given a top bunk despite being prescribed a bottom bunk, not that his disability led prison officials to give him a top bunk despite his bottom bunk profile. To the extent [the plaintiff] claimed discrimination could be inferred from the absence of legitimate penological reasons for his assignment, he merely made a conclusory allegation, which was not specific enough to survive a motion to dismiss. See Randall, 610 F.3d at 709-10.[8]

Additionally, the Eleventh Amendment also precluded [the plaintiff]'s ADA claim. As explained above, [the plaintiff]'s allegations did not show that the defendants' conduct violated [the plaintiff]'s constitutional rights, so they were entitled to Eleventh Amendment immunity against his ADA claims. Therefore, the district court did not err by dismissing [the plaintiff]'s ADA claim for failure to state a claim.

Redding, 557 F. App'x at 844-45.

In addition to not directly addressing the issue presently before this Court, Redding is factually distinguishable.[9] The deficiencies in the Redding plaintiff's complaint are not

---

[7] Goodman v. Kimbrough, 718 F.3d 1325, 1329 (11th Cir. 2013).

[8] Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

[9] According to Plaintiff, "the plaintiff in Redding does not even appear to have had a medically authorized bottom bunk pass and a bed rest pass." Response at 11. However the plaintiff in Redding at least had a medical profile indicating a bottom bunk. See Redding v. Georgia, No. 5:12-CV-174(CAR), 2013 WL 2948110, at *6 (M.D. Ga. 2013) (unpublished) (quoting a grievance response: "'[o]ur review revealed that you were wrongfully placed in a top bunk and that you do have medical profiles indicating wheelchair, bottom bunk, and

7

present in this case and Defendants challenge Plaintiff's ADA claim on different grounds. The plaintiff in Redding made conclusory allegations, he failed to allege facts showing a culpable state of mind, and he failed to allege that his assignment to an upper bunk was discriminatory in any way. Whereas here, Plaintiff alleges facts such as his prior fall, his prescribed medical pass, his alerting Defendant Moran, and his return to an upper bunk after the January 21, 2013 fall that could lead to an inference of the DOC's knowledge of his need for a lower bunk and its discriminatory failure to accommodate him.

Moreover, Plaintiff alleges that medical personnel prescribed him a low bunk pass, but prison officials assigned him to an upper bunk. He has alleged more than a disagreement with his medical treatment. Indeed, he sought the treatment that medical personnel prescribed. See generally Lonergan v. Fla. Dep't of Corr., 623 F. App'x 990, 994 (11th Cir. 2015) (finding that "the failure of the prison to give the [p]laintiff the treatment prescribed by his dermatologist is sufficient for the [p]laintiff to plead a prima facie ADA claim"). At this point, the Court finds that Plaintiff has alleged enough to state a claim under the ADA and RA with respect to his bunk placement (Counts I and II), and that the underlying constitutional violation (Count V) is sufficiently stated so as to overcome Defendants' Eleventh Amendment immunity argument.[10]

Plaintiff's ADA and RA claims involving a helmet, however, are insufficient to survive the Motion to Dismiss. Plaintiff alleges that prior to the incidents forming the basis of his claims, he "had asked several times for a protective helmet for his head in case he fell during

lower range housing'").

[10] Count V is discussed in more detail below.

a seizure episode. However, the DOC never provided [him] with a protective helmet." Amended Complaint at 5. Plaintiff does not allege what services, programs, or activities in which he could not partake. Neither does he allege that he was denied a helmet or protective device on the basis of his disability. His recitation of the elements of a cause of action under the ADA and RA are conclusory.

Moreover, Plaintiff acknowledges that he "did not allege a specific count [for] a constitutional violation for not providing [him] with a protective helmet," but argues that "there are enough facts pled . . . to make out a constitutional violation with the facts being incorporated by reference in the Complaint in its entirety." Response at 11. Plaintiff has already been afforded an opportunity to amend his claims. Because he has not alleged a constitutional violation against any named Defendant relating to the helmet, he cannot recover monetary damages under the ADA[11] with respect to the helmet. In sum, the Court finds that the Motion is due to be granted as to Counts III and IV.

**C. Count V**

Plaintiff claims that Defendant Moran was deliberately indifferent to Plaintiff's risk of serious harm when Defendant Moran knew that Plaintiff had a low bunk pass, but failed to reassign Plaintiff to a lower bunk. Defendants argue that "Plaintiff's allegations fail to establish a plausible claim that Defendant Moran acted with an attitude of deliberate indifference." Motion at 9 (capitalization omitted). Specifically, Defendants assert that

---

[11] Although the DOC is not immune from damages under the RA because it receives federal funding, Plaintiff has failed to state a claim sufficient to seek monetary damages under the RA.

9

"Plaintiff fails to show that Defendant Moran was subjectively aware of a risk of serious harm to Plaintiff that would rise to the level of deliberate indifference." Id. (capitalization omitted).

Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences therefrom, the Court finds that Plaintiff has alleged sufficient facts to state a deliberate indifference claim against Defendant Moran. Plaintiff has alleged a sufficiently serious condition, and that Defendant Moran acted with deliberate indifference. Although the facts may ultimately show that Defendant Moran at most exercised negligence, such a determination should be made after discovery; Plaintiff's allegations at this point are sufficient to warrant factual development. Thus, the Motion is due to be denied to the extent it seeks dismissal of Count V based on failure to state a claim and qualified immunity.

### D. Counts VI, VII, and VIII

Plaintiff raises three state-law claims: Defendant Jones negligently trained, retained, and supervised Defendant Moran; Defendant Moran was negligent when he failed to assign Plaintiff to a low bunk based on Plaintiff's low bunk pass; and Defendant Jones is vicariously liable for the negligent acts or omissions of her employee. Citing to Florida Statute § 95.11(5)(g), which imposes a one-year statute of limitations on certain claims filed by prisoners, Defendants argue that Counts VI, VII, and VIII should be dismissed as untimely. The Court disagrees. Plaintiff alleges that he suffered a physical injury due to the negligent or otherwise wrongful acts or omissions of the Defendants. See Green v. Cottrell, 204 So. 3d 22, 29 (Fla. 2016) (holding "that where a prisoner files an action alleging that he suffered physical injury due to the negligent or wrongful acts or omissions of the employees of a

government entity, the one-year statute of limitations period in section 95.11(5)(g) . . . does not apply"). Defendants' Motion is due to be denied in this regard.

### E. Count VI

Defendants argue that Plaintiff has failed to state a claim for negligent supervision, retention, or training against Defendant Jones. See Motion at 13-15. In the Response, Plaintiff states that he has not had the opportunity to depose Defendant Moran, and he "requests the opportunity to conduct limited discovery" on this claim. Response at 14. He "asserts that the proper vehicle would be a Rule 56 motion to attack this count after discovery has been concluded." Id. at 14-15 (citation omitted). Otherwise, Plaintiff does not substantively address Defendants' argument that he fails to state a claim.

> In civil actions, a plaintiff's right to perform discovery and present his claims to a jury are not absolute. In particular, a motion to dismiss for failure to state a claim must be resolved before discovery begins. That is because "[s]uch a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1367 (11th Cir. 1997). As a result, "neither the parties nor the court have any need for discovery before the court rules on the motion." Id.

Roman v. Tyco Simplex Grinnell, No. 17-13895, 2018 WL 2024663, at *2 (11th Cir. May 1, 2018) (per curiam). Discovery is not a device used to determine whether a plaintiff can state a claim. Thus, Defendants' Motion is due to be granted to the extent that Claim VI is dismissed.

### F. Count IX

According to Plaintiff, Defendant Moran, while acting outside the scope of his employment, intentionally or recklessly inflicted emotional distress on Plaintiff, and Defendant Moran's outrageous conduct constitutes a deliberate or reckless infliction of mental suffering on Plaintiff.

To state a claim for intentional infliction of emotional distress (IIED), a plaintiff must show that the defendant:

> (1) acted recklessly or intentionally; (2) by conduct that was extreme and outrageous; (3) which caused [the plaintiff's] emotional distress; (4) and that [the plaintiff's] emotional distress was severe. Johnson v. Thigpen, 788 So. 2d 410, 412 (Fla. 1st DCA 2001). To meet the outrageousness standard, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community" such as would lead "an average member of the community" to exclaim, "Outrageous!" Id. at 412-13 (citing Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla.1985)). "Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous to support a claim for intentional infliction of emotional distress." Foreman v. City of Port St. Lucie, 294 F. App'x 554, 557 (11th Cir. 2008) (citing McCarson) (holding that officer's pointing an unloaded BB gun at the husband's chest and pulling the trigger while wife, who thought gun was loaded, watched, was not sufficiently outrageous under this standard). See also Frias v. Demings, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011) (holding that officer's conduct may have caused embarrassment but was not sufficiently outrageous under Florida law to support an IIED claim where officer followed unarmed witness into her apartment, grabbed her arms, handcuffed her and took her out to his patrol car, notwithstanding that she was only wearing a towel). "The issue of whether a plaintiff has met the requirements . . . in a claim for intentional infliction of emotional distress is a question for the trial court to decide as a matter of law." Johnson, 788 So. 2d at 413.

Tarantino v. Citrus Cty. Gov't, No. 5:12-cv-434-OC-32PRL, 2014 WL 4385550, at *16 (M.D. Fla. Sept. 4, 2014) (unpublished).

The Court finds as a matter of law that Plaintiff has alleged insufficient factual matter to state a claim and to warrant factual development. As such, Defendants' Motion is granted as to Count IX.

Upon consideration of the parties' filings and the applicable law, it is

**ORDERED**:

1. Defendants' Motion to Dismiss Amended Complaint (Doc. 34) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED to the extent** that Counts III, IV, VI, and IX are **DISMISSED with prejudice** and Plaintiff's request for injunctive relief is **STRICKEN**. The Motion is otherwise **DENIED**.

2. Defendants shall answer the Amended Complaint by **August 28, 2018**.

3. A Second Amended Case Management and Scheduling Order will enter.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of August, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 7/31
c:
Counsel of Record